The first appeal I've had, so I appreciate the opportunity. The applicant filed a patent application for a drain valve. It's a drain valve that has been in existence before many of the components have. If you're familiar with a drain valve, it's connected to a pressurized system to periodically relieve pressure or liquid from the system. This particular drain valve also included the combined features of having a manually operated portion of the valve that could either manually relieve pressure or fluid, therefore bypassing the automatic drain, or isolate the drain valve for repairs and maintenance. Do you agree that all of the asserted claims rise or fall with Independent Claim 1? Yes, Your Honor, absolutely. Independent Claim 1 recites the elements that make this automatic drain valve both novel and non-obvious in light of Rasmussen and France. France is a patent that issued in the mid-60s to the same assignee as this patent. You argue in the blue brief that valve body properly is construed as an outer casing that contains the internal parts of the valve. Correct. But didn't the PTAB apply exactly that construction? I don't believe they did. For several reasons. One... Let me direct you to JA 5, finding that the seat of the unlabeled valve would be an internal part of and contained within the outer casing of drain valve 10. That's on appeal. You're absolutely correct. The Patent Office on appeal changed the factual basis for affirming. It's important to note if you look at Figure 7 of Rasmussen, prior to this appeal, the rejection was always, 100% of the time, based on the construction of valve body is everything to the right of the tank shown in Figure 7. And at the PTAB, the board said the sole issue that everybody agrees about is, is the valve above 17A, is that part of the valve body? Now on appeal, the Patent Office has changed the factual support for that rejection and says, no, not the valve above 17A, but the Patent Office says there is a seat, an inlet seat in 17A. I 100% agree, as we pointed out in our reply, 100% agree that 17A is part of the valve body, but I 100% dispute that 17A has an inlet seat. It has no reason for an inlet seat. It connects to a valve, it connects, excuse me, connects to a pipe. It doesn't connect to a valve seat inside. There's no reason why it would have an inlet seat. It's not inherent. And the Patent Office's changed position to support the obviousness and anticipation tells us that the previous rejection was not factually supported. Applying our construction, which the Patent Office, I believe, agrees is appropriate, they've modified the factual basis to support the rejection to say, there's something inside 17A that's never been said before, and it's not stated in Rasmussen, and it wouldn't have a valve seat. But is it clear from the claims that the inlet seat has to be in the valve body? The inlet seat has to be not only in the valve body, but defined by the valve body. The elements are inside the valve body. There are internal components inside the valve body. The claim says that the valve body has to define the inlet seat. It forms the inlet seat. So it's not only in the valve body, it's part of the valve body. Even if we agree on you with respect to the anticipation arguments, there are several obviousness findings. And you don't dispute the findings with respect to the motivation to combine Rasmussen and France, right? No, I don't, Your Honor, because I dispute the prima facie existence of all the elements. And it's based on the anticipation. If, let me address France first, there was a rejection based on France that was abandoned because, quite frankly, it's just unsupportable. And the Patent Office did the right thing and didn't pursue that argument. France does not teach anything about a sensor having a signal that detects a pressure reflective of the downstream pressure inside the inlet. So France doesn't teach a sensor downstream of the inlet that produces a signal. Can't argue about that anymore. Rasmussen also doesn't. In the anticipation argument, we point out that Rasmussen has no inlet seats. Rasmussen has a sensor, 42, definitely has a sensor, but there are no inlet seats. So the sensor in Rasmussen is upstream of every seat in Rasmussen. And what about anything in either of those would indicate that you couldn't have taken a downstream valve and move it upstream or inlet? Well, I think if I understand your question, why couldn't you add an inlet seat to Rasmussen so that now all of a sudden the sensor is downstream of an inlet seat? I think that's the obviousness rejection is if you take France and you add the inlet seat to Rasmussen, well, first off, as we somewhat discussed, and I'm not sure we argued very hard because it's probably not our best argument, but it's a reality, is how do you combine all that stuff? You know, these are simple mechanical inventions, certainly not near complicated to what I've been listening to the last hour and a half. But nonetheless, they're difficult to get over obviousness rejections because the inventors didn't invent a valve seat, didn't invent a valve body, didn't invent members, didn't invent a sensor. What they invented is they had a valve, the France valve, that had been in operation for 50 years, and they discovered, they identified, they realized, which is part of the inventive process, hey, this valve that has integrated operation, it actually creates, it introduces operator error. Operators can now misposition this valve and we have problems. So they said, let's fix that. So the first thing they did that's not obvious is they identified a problem. The second thing is they figured out how to do it. And that's where, you know, we say there is no prima facie rejection because nobody's ever put a sensor inside a valve downstream of the inlet with the rest of the limitations. It's a hurdle that everybody bears in simple mechanical is all the elements are out there, but we would say, why would you pick something and put it in Rasmussen, which is a completely different drain valve, by the way. It's a float drain valve, not the same thing as, you know, this arc. They're all drain valves, but when asked why wouldn't it be obvious, well, they're really sort of different. As a practical matter, how would you put all this stuff from France inside of Rasmussen? And by stuff, I mean, if you are going to add an inlet seat to Rasmussen, you would only do that because you're going to add a valve member that moves in or out of engagement with the inlet seat. As you can see in Figure 7 or Figure 4, which is enlarged, there's not a whole lot of real estate in there. And I don't mean that you can't just build a bigger valve, but there are a lot of practicalities that it's difficult to address as saying it's obvious. But is your primary argument that the valve body has to define the inlet seat, or is your primary argument that the sensor has to be downstream of the inlet seat? Well, it depends. On anticipation, the valve body has to define the inlet seat, and that's not present in Rasmussen. On obviousness, it's sort of tied to that. And let me see if I can articulate it this way. If the claim is rejected as Rasmussen in view of France, we would say France doesn't teach a valve downstream of the inlet, it just doesn't have it. And Rasmussen doesn't either because it doesn't have an inlet seat, so it can't teach that element. Does that make sense? Well, when you're combining references, you don't have to have all of the elements in each reference. No, but that's correct. But I'm saying the element of a sensor located downstream of the inlet seat, neither of those references have it. France doesn't have a sensor, and Rasmussen has a sensor upstream of every inlet. I'm sorry, upstream of every seat. It doesn't even have an inlet seat. So, you know, it's difficult to say without saying it's hindsight, why would somebody put an inlet seat in Rasmussen? And in the obviousness rejection, I believe the patent officer's position is, if you consider that Rasmussen has an inlet seat, then it also has a sensor downstream of the inlet seat. And I think that's circular. Rasmussen and France is being... France is being combined with Rasmussen to provide the inlet seat. Well, since Rasmussen doesn't have an inlet seat, it cannot have a valve downstream of an inlet seat. And I understand it's a close edge to say, but once you add the inlet seat of France, then you have the valve downstream of the inlet seat. But I think that's an example of hindsight. Why would you put that inlet seat from France there to get a sensor downstream of the inlet seat? You wouldn't. There's no reason to do that. And perhaps, you know, we could have argued that there wasn't a motivation to combine, but I'm more a fan of the discrete elements. And in this case, the sensor in Rasmussen is not downstream of an inlet seat. That's what the inventors came up as a solution. It's unique. It's not obvious. And in figures one through four, it shows how by doing that, you get an indication to an operator, which in this environment, it might be in railroad trains that are a mile long. Now you have an indication a mile away saying, hey, somebody has mispositioned that valve. We need to go out there and look at that. That's a real improvement over France. And it's a real improvement over Rasmussen, which is a completely different kind of valve. Subject to your questions, I'll reserve the rest of the time for rebuttal. We will vote for you, Mr. LeBlanc. Mrs. Schoenfeld. May it please the court. Well, as my opponent pointed out, the claims are to an improvement over the France valve of adding a pressure sensor between the two valves. It would be obvious to add the pressure sensor to France. And his argument now that there are- In a lot of recent cases, we've vacated and remanded to the PTO for lack of an adequate explanation. Correct. Would you identify the specific explanation in the record cites, the factual findings in the record that you believe are sufficient to affirm the determination that Rasmussen anticipates the asserted claim? That Rasmussen anticipates the asserted claims? Mm-hmm. And as well, the obviousness ones. I might as well do both at once. OK. Because I think it's pretty messy. OK, so the claims here are to an improved drain valve. The pressure sensor is the only thing that's being added. If we look at what the board did, the board agreed with the examiner findings on appendix four. And then the board addressed the specific issue of the rejection, which is the positioning of the Rasmussen inlet seat. The board found that the examiner had the better position. So in affirming the examiner, the board affirmed the examiner's rejection. You know, if we look at the, I believe, the final rejection on 271, the examiner lays out where Rasmussen has the first member, has the second member, has the valve body, has the sensor. And then for- So you're relying on just this little piece on appendix five as the entirety of the anticipation rejection? Well, appendix four and five, because the board states that the examiner finds that Rasmussen discloses all of the independent claim one. And as we see from the record, the examiner pointed to each of the pieces of claim one. I mean, claim one is very short. There's only a drain valve, a body, inlet seat, outlet seat, two valve members, and a sensor. So the examiner had pointed to that. The board found that they agreed with that analysis and then discussed the narrowed issue in the briefing, which was the positioning of the Rasmussen. And then for the obvious- Where is the inlet seat in Rasmussen? The inlet seat is would be connected to the valve which is above 17A. So in figure- Yeah, but what about Rasmussen indicates that that is the inlet seat, other than the board just saying it is? Well, there's clearly a valve. There's no dispute that there's a valve above the inlet port 17A. And in fact, Hodges to the board didn't dispute that there was an inlet seat. If we turn to 256 note one, it says, applicant acknowledges the center is downstream of the inlet seat in the valve above 17A, as stated in the present rejection. But there's nothing that says that the inlet seat is integrated with the valve structure. Well, 17A is a port, and there's a valve above the port in 17A. There's flow being controlled through 17A with a valve. Typical valve has a seat, a member to control the flow. So I don't think there's an issue that there is a typical valve, that there would be a valve member, a valve seat. You know, this drawing in figure seven is a schematic combined with a specific drawing. So I think it's not entirely clear exactly where the valve member is, but it's clear there is a valve member. You've got to have all the elements of the claim for anticipation. Right. So the examiner found that the inlet seat would be above 17A. Above the valve body. Above what? Above the valve body. Well, the examiner found, so if we look at the claim and how the claim, which is the same way that the specification defines valve body, valve body is defined by the inlet seat. So all the valve body needs to do is contain an inlet seat. So based on the claim language and the specification language actually, it says if we look at 49, the valve body defines an inlet seat. Could a valve function without an inlet? I don't believe so. I'm not aware of every single kind of valve there is there,  Right. How does a valve body define an inlet seat if the inlet seat is outside of and above the valve body in Rasmussen? Well, the, I mean it's not clear exactly where the seat would be in Rasmussen, but the valve body could include more than just 10, just housing 10 in Rasmussen. The way that, like I said, the way the claim is written is very broad and it certainly leaves the possibility open that you would have a valve body which includes that valve as opposed to just the housing because nothing in the claim or specification limits it. But the most simple way to reject this claim is over the France and Rasmussen rejection, which my opponent admitted is the same valve with the valve body, everything included, just missing a pressure sensor. And Rasmussen has a pressure sensor, as I directed to you earlier. He admits that the pressure sensor is downstream of the inlet seat. He doesn't contest the motivation to combine. So that's the easiest way to get there, the most simple way. And no objections to the fact that France is the same valve body, Rasmussen has a pressure sensor, and it would be obvious to use a pressure sensor in that valve. If there are no further questions, I'll yield the rest of my time. All right, thank you, Ms. Schoenfeld. Mr. O'Blank has four and a half minutes. Thank you, Your Honor, I don't think I'll need it. I think I missed where you conceded the motivation to combine. Where I conceded the motivation? Yes, your opposing counsel said you conceded the motivation to combine. I thought she said that I conceded that the combination of France with Rasmussen taught the sensor downstream of the inlet. I thought the motivation to combine, I think I addressed to Judge O'Malley,  those are clear subjective calls. And our position in any of these simple mechanical, is they're really hard to argue that it's not obvious in hindsight. But the reality is this company has been making this valve for 50 years. If it was obvious, they would have done it a long time ago. And I know there's some case law saying that's not an argument. I don't understand that. I think that is an argument of non-obviousness. If I could have done it before, I would have. But the idea didn't come up to Hodges. And these ideas don't just pop in. It's sort of you're looking at customers saying, hey, we're having a problem. Identifying the problem is part of the non-obviousness analysis. Finding out how to do it is really technically pretty cool, too, in a little valve like this. But identifying the problem is half of the battle. So I don't think we've argued there's no motivation to combine directly. But we've argued that I'm not sure you could do this stuff. I certainly have argued today that these valves are different enough that I'm not sure anybody would be motivated to add an inlet seat to Rasmussen that already has external isolation valves. Why does it need an inlet seat? Why would you do that? As I understand it, your argument is even if you would be motivated to combine them, it still wouldn't work? No, Your Honor, even if you were motivated to combine them, you're still missing the element of a sensor downstream of an inlet seat. France doesn't have it. And Rasmussen doesn't have it. So where do you get to put a sensor downstream of an inlet seat? The only way you get that is from the application. And you artificially say, well, let's put an inlet seat in Rasmussen. Then we have it. Didn't the PTO say that an inlet seat has to be inherent in Rasmussen? I think the patent office is definitely arguing that on this appeal. And it is not inherent. It absolutely is not inherent. It's anti-inherent. There is no valve member in Rasmussen. Why would you have a valve seat without a valve member? I think in Judge Wallach's question, can you have a valve without an inlet? I don't think so. Can you have an inlet seat without a valve member that operates against that? Definitely not. You would not. Why would you have it? It's like having a clutch in an automatic transmission car. It's not needed, not required. The other question I wanted to touch on is that we've, I think I heard this, that Rasmussen has a sensor that's downstream of the inlet seat. And we disagree with that. And it's tied into the anticipation. Rasmussen does not have an inlet seat, so it cannot have a sensor downstream of the inlet seat. The quote that she, that my opponent recited is, you know, we agree that if the inlet seat in the valve above 17A is an inlet seat, then there is a sensor downstream of that inlet seat. But we disagree that an inlet seat in another valve constitute an inlet seat in the valve body that we're talking about in Rasmussen. The other, one item I want to briefly touch on is the scare of remand. You know, we want to win this, we want to get a patent, but we have been arguing this claim construction since day one. I had a telephone interview, I did, had a telephone interview, it's on, it's in the record, in the response, and I had a tab here, but I lost it, with the examiner. And it immediately said, hey, the issue is what is a valve body? And the examiner said, hey, body is everything. That's one of those nonce terms. And I said, no, it's really not. A valve body is like a car body, a human body, it's got real meaning. And we've disagreed about that from the beginning. At the board, the board said, the issue on appeal is whether that valve above 17A is, the inlet there is part of the valve body. That's the issue. There is nothing to remand. That's, it's not, it's not part of the valve body. That's the issue. There's no factual dispute to remand. I agree they didn't do a great job on some of the things. I didn't do a great job on some of the things. But the, there's nothing to remand here. We want to get a patent, but this isn't something that we want to go back and do it again. To be clear, I had a telephone interview, the examiner went final, we filed an appeal, we briefed an appeal, it was pulled out of appeal, a new, a new rejection was asserted, and it's appealed again. Thank you for your time. Thank you, Council, for taking the case on revival. Thank you for your time.